UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAY 10 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-342-GWU

JOHN HENSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Henson

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, John Henson, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments due to farsightedness, chronic obstructive pulmonary disease with ongoing tobacco abuse, mild cervical degenerative disc disease, lumbar degenerative disc disease, a history of a left shoulder injury, an anxiety disorder, and "rule out" borderline intellectual functioning. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Henson retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 28-31). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, John Henson, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments due to farsightedness, chronic obstructive pulmonary disease with ongoing tobacco abuse, mild cervical degenerative disc disease, lumbar degenerative disc disease, a history of a left shoulder injury, an anxiety disorder, and "rule out" borderline intellectual functioning. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Henson retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 28-31). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional

impairments. (Tr. 460). He: (1) could not reach overhead with his left arm; (2) needed to avoid exposure to pulmonary irritants such as dust, smoke, fumes, and gas, as well as exposure to extreme temperatures and humidity; and (3) was limited to simple, one to two step tasks and instructions in an object-focused work setting. The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 461).

On appeal, this Court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depicted the plaintiff's condition. Mr. Henson's current SSI application was filed on September 11, 2002, making that the earliest date at which he would be eligible for benefits. He testified, however, that he had not worked regularly since 1996, but did do some part-time jobs such as digging ginseng. (Tr. 439-43). He had been forced to stop his long-time job at a dairy farm because of an allergy to latex gloves (Tr. 440), but he could not work presently for a variety of reasons including headaches due to sinus problems, chronic obstructive pulmonary disease, slipped discs in his back, and a requirement that he wear tinted glasses which he could not afford to buy. (Tr. 443-4, 454). Despite his breathing problems he continued to smoke. (Tr. 445). Although he was receiving Robaxin and Lorcet from Dr. Richard Lingreen for his back problem, he could still hardly bend up or down or walk more than half a mile. (Tr.

446). His left shoulder had been injured and knocked out of place when someone had hit him with an ax handle and, as a result, he could hardly lift his 28 pound child with that extremity. (Tr. 449, 456). He was also seeing a psychiatrist and counselors at the Comprehensive Care Center (CCC) for depression and anxiety. (Tr. 450-1). However, he had not been able to make his recent appointments as a result of not having a driver's license, and was not taking the Trazodone which had been prescribed. (Tr. 451). Mr. Henson admitted to being a heavy drinker until about three years earlier, but stated that he had cut back after receiving his third DUI. (Tr. 452).

Many of the medical records in the transcript predate September, 2002, including a pulmonary function test from August, 2001 showing a mild restriction and mild obstruction. (Tr. 130).

At a consultative physical examination by Dr. Bobby J. Kidd in November, 2002, Mr. Henson complained of breathing problems and asthma, but admitted that he continued to smoke, and had never had to go to the emergency room for extra breathing treatments. (Tr. 156-7). Mr. Henson had acute sinusitis on the day of the examination, and an apparent rash from scabies on his abdomen but, otherwise, the physical examination was largely normal. (Tr. 157-60). In particular, his lungs were clear, his lumbar spine was not tender, and he could bend forward 90 degrees at the waist. (Id.).

9

Office notes from the plaintiff's family practitioners at the Burning Springs Clinic include diagnoses of allergic rhinitis, chronic obstructive pulmonary disease confirmed by chest x-rays (Tr. 166, 183), and an MRI of the left shoulder from December, 2002 showing a Type 1 injury of the AC joint with a partial tear of the AC ligaments without complete disruption (Tr. 165, 182). For this problem, he was referred to an orthopedist, Dr. Belhasen. (Tr. 164).

Dr. Belhasen wrote a letter on August 13, 2003, stating that the plaintiff had a left shoulder injury and was found to have AC joint separation, but no other significant musculoskeletal condition, although he did have chronic obstructive pulmonary disease and "previous eye surgery." (Tr. 190). Dr. Belhasen opined that the shoulder injury would tend to keep Mr. Henson from doing prolonged overhead work, or heavy lifting for six to nine months following the injury, and typically, after that, he should be able to return to all his normal activities. (Id.). If he had had surgery in the future, this, too, would cause only temporary partial disability before a successful return to work. (Id.).

A lumbosacral spine MRI in July, 2003 showed degenerative disc disease at L4 through S1 without spinal stenosis or neuroforaminal narrowing. (Tr. 193). Eventually, in July, 2003 Mr. Henson was referred at his request to Dr. Lingreen for chronic low back pain. (Tr. 162).

10

Dr. Lingreen, a neurosurgeon and specialist in pain management, began treating Mr. Henson in August, 2003, noting a history of addiction to alcohol for which he would continue to be treated at CCC. (Tr. 191). Mr. Henson complained to the doctor of head, neck, and admitted low back pain for the past seven years. (Id.). Dr. Lingreen's examination showed a normal neck range of motion, no tenderness or spasm, and Spurling's test of the upper extremities was negative, but Dr. Lingreen diagnosed cervicalalgia and cervical radiculopathy nonetheless. (Id.). Mr. Henson's lumbar spine was tender and painful but without spasm, and he had a positive straight leg raising test on the right. (Id.). Reflexes and sensation were normal. (Id.). Dr. Lingreen also diagnosed lumbago, a lumbar strain/sprain, lumbar degenerative disc disease, and muscle spasms. (Id.).[1]

On October 7, 2003 Dr. J. E. Baez-Garcia completed a functional capacity assessment limiting the plaintiff to light level exertion, with additional non-exertional restrictions consistent with the ALJ's hypothetical question, supra. (Tr. 243-8).

Subsequent records were submitted, including chest x-rays showing scattered granulomata and some calcified hilar lymph nodes, but the lungs were otherwise clear. (Tr. 396). An MRI of the cervical spine in February, 2004 showed mild degenerative disc disease and a suggestion of small posterior protrusions at C4

---

[1] The diagnosis of muscle spasms was also in direct contradiction to the body of Dr. Lingreen's report, which had indicated that there were no muscle spasms.

11

through C6. (Tr. 400). Dr. Lingreen then offered "injective therapy," but the plaintiff declined. (Tr. 406). The physician continued to prescribe Lorcet and Robaxin. (Tr. 405-6). No functional restrictions were suggested.

Since Dr. Belhasen was the only examining physician to discuss functional restrictions, and he indicated that Mr. Henson's shoulder problem would not be a cause of permanent disability, the ALJ could reasonably have relied on the overall findings of Dr. Baez-Garcia. Therefore, this portion of the decision is supported by substantial evidence.

As far as the psychological condition was concerned, the plaintiff, as previously noted, described problems with alcohol, and with anxiety and depression. A psychological examination by Dr. Pamela Starkey in October, 2002 produced seemingly tentative diagnoses of "alcohol dependency in early remission (provisional)," "rule out" anxiety disorder, "rule out" math disorder, and "rule out" borderline intellectual functioning. (Tr. 153). However, she indicated that Mr. Henson was "not likely" to be able to sustain the attention and pace necessary for completing tasks in a work setting, was "not likely" to be able to understand simple, one to two step instructions without difficulty, and was "likely" to respond to the pressures of a day-to-day work setting by becoming "mildly anxious." (Tr. 152-4). State agency reviewers at this point imposed some "moderate" limitations, but these were apparently partially based on substance addiction as well as anxiety. (Tr. 217,

12

231-3, 263-5).[2] Subsequently, notes from the CCC were submitted showing that Mr. Henson was seen from August, 2001 to October, 2003 after being convicted of his third DUI offense. (Tr. 272-394). At the time of discharge, his diagnoses were cannabis dependence and alcohol dependence, and it was said that he was still alcohol dependent and continued to smoke marijuana. (Tr. 272-3).[3]

Dr. John Schremly, the psychiatrist at CCC, continued to treat the plaintiff, and noted in January, 2004 that Mr. Henson described depression over the anniversary of his father's death six years earlier, asserted that he had reduced his drinking to no more than one case of beer per year, and claimed to use no other drugs. (Tr. 398). Dr. Schremly diagnosed a depressive disorder "with complicated grief," and alcohol dependency "in early full remission." He prescribed Lexapro and, subsequently, Trazodone, which the plaintiff testified that he no longer took at the time of the administrative hearing.

The plaintiff has raised no specific arguments regarding the assessment of his mental status. The restrictions given by Dr. Starkey and the state agency reviewers appear to be intertwined with substance abuse, which is no longer a basis

---

[2] Publ. L. No. 104-121.

[3] Mr. Henson informed the counselor in January, 2002 that he had spent one year in prison for "unlawful transaction with a minor," but said he did not do anything wrong, and also claimed that he had not been drunk at any of his DUI arrests. (Tr. 388).

13

Henson

for disability.[4] Under these circumstances, the mental limitations as given in the hypothetical question are supported by substantial evidence.

The decision will be affirmed.

This the __10__ day of May, 2006.

*signature*
G. WIX UNTHANK
SENIOR JUDGE

---

[4]See footnote 2.